IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| DAWALUS MARQUIS HAMPTON, | § § § | |
| Petitioner, | § § | Case No. 6:19-cv-67-JDK-KNM |
| v. | § § | (Consolidated Case: 6:21-cv-254) |
| DIRECTOR, TDCJ-CID, | § § | |
| Respondent. | § § § | |

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Petitioner Dawalus Marquis Hampton, a Texas Department of Criminal Justice inmate proceeding pro se, filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 attacking the legality of his conviction.

**A. Background**

Petitioner was convicted of delivery of a controlled substance on his guilty plea on October 29, 2017, and was sentenced to thirty years in prison. He waived his right to appeal and thus did not take a direct appeal. He filed a state habeas corpus petition, which was denied without written order on the findings of the trial court without a hearing on February 6, 2019. Petitioner then filed this federal habeas petition.

According to police reports—which were part of the discovery offered and accepted into evidence at the plea hearing—Tyler police officers Erbaugh and Fite were dispatched to the area of West Oakwood Street and North Gaston Avenue in Tyler in reference to a fight in progress. Docket No. 11-4 at 49. On the way, they

1

passed a 2006 Cadillac SRX abandoned in the roadway. Officer Fite, who arrived first, saw Petitioner and Danquanella Donaldson engaged in a fight and ordered them to the ground. He spoke to them individually about what had happened. When Officer Fite asked about the car, Donaldson told him that she and Petitioner had been in the Cadillac with another person, a friend of Petitioner's, but Petitioner denied knowing anything about the car.

After Officer Erbaugh arrived, the two officers viewed the area and located the car. The vehicle was parked on the southbound side of North Gaston Avenue, blocking the lane of traffic. There was no one around the car and the engine was running. Officer Fite opened the passenger door to check for owner information and noted the distinct smell of marijuana. During a search of the vehicle, officers found Xanax pills in the backseat and a liquid substance suspected to be PCP. The driver's door contained a Texas ID card belonging to Petitioner, and Petitioner's TDCJ offender card was located in the center console. Because neither Petitioner nor Donaldson claimed ownership of the car, Officer Fite had it towed as a traffic hazard. Docket No. 11-4 at 49–50; Docket No. 11-6 at 54.

According to Petitioner's version of the facts, he and a friend were detained by police, who said they had received a call that Petitioner and his friend were involved in a physical altercation. Docket No. 1-4 at 40. Officer Fite had them lie on the ground until backup arrived, at which point they were each questioned. Petitioner states that he and his friend told similar stories. The police asked who was driving

the car that had been parked at the curb, since they had seen someone drive away from the scene. Soon afterwards, Petitioner states he and his friend were released.

Two months later, Petitioner states that he was in jail on unrelated charges when he was brought before a magistrate and a charge of possession was added to other already pending charges. He related all this information to his attorney, Kurt Noell. Petitioner states that Noell coerced him into believing that if the case went to trial, Petitioner would be found guilty and given a life sentence. Based on that understanding, Petitioner asserts that he pleaded guilty to receive a thirty-year prison sentence.

### B. The Petition and Amended Petition

In his original petition, Petitioner contended that: (1) he received ineffective assistance of counsel, (2) the State withheld exculpatory evidence, and (3) there was no evidence to support the conviction. Docket No. 1. Respondent was ordered to answer and did so, furnishing a copy of the state court records. Docket Nos. 10; 11. After Respondent answered on April 19, 2021, Petitioner moved for leave to amend his petition; the Court granted leave. Docket Nos. 51, 53.

Petitioner's amended petition was docketed under a new and separate case number, cause number 6:21-cv-254. The Court consolidated the two cases, rendering the petition in cause number 6:21-cv-254 as Petitioner's amended and operative petition. The amended petition, like the original, alleges that: (1) Petitioner received ineffective assistance of counsel, (2) the State withheld exculpatory evidence, and (3) there is no evidence to support the conviction.

### C. Discussion

#### 1. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient, and that the deficiency prejudiced him to the point that he was denied a fair trial. *Strickland v. Washington*, 466 U.S. 668, 678 (1984). This means that the habeas petitioner must establish both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. *Del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007). The burden of proving ineffective assistance of counsel is on the petitioner. *Hayes v. Maggio*, 699 F.2d 198, 201 (5th Cir. 1983).

In addition, a petitioner has the burden of identifying the acts or omissions of counsel that are alleged to not have been the result of reasonable, professional judgment. *Strickland*, 466 U.S. at 694; *Jones v. Butler*, 864 F.2d 348, 365 (5th Cir. 1988). General statements and conclusory charges of ineffectiveness will not suffice. *Green v. McGougan*, 744 F.2d 1189, 1190 (5th Cir. 1984).

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a "highly deferential standard for evaluating state court rulings" and "demands that state court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010). In the context of analyzing claims of ineffective assistance

of counsel, the Supreme Court has explained that the standards created by *Strickland* and 28 U.S.C. § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Application of this doubly deferential review is different from asking whether defense counsel's performance fell below the *Strickland* standard. This is because the state court must be granted a deference and latitude that is not in operation when the case involves review under the *Strickland* standard itself. Consequently, the Fifth Circuit has stated that even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable; rather, in order to obtain habeas corpus relief, a petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Druery v. Thaler*, 647 F.3d 535, 539 (5th Cir. 2011).

In the context of a guilty plea, a petitioner must show that counsel provided ineffective assistance and that but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1986); *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988). Mere allegations from a petitioner that he would have demanded a trial if counsel's advice had been different are insufficient to establish a reasonable probability that he would have actually done so. *Id.* This requires a case-by-case examination of the totality of the evidence. The Supreme Court has declined to adopt an automatic rule denying prejudice claims. When the defendant cannot mount a viable defense, the Court warned courts against

5

upsetting a plea solely because of *post-hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Instead, courts should look to contemporaneous evidence to substantiate a defendant's expressed preferences. *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017).

Petitioner argues that his counsel, Kurt Noell, failed to investigate the elements of the case, failed to pursue a defense, and failed to inform Petitioner of the elements of a criminal drug possession crime. Petitioner contends that Noell coerced him into signing a plea agreement because counsel was not being paid for the possession case. He argues that counsel knew there was a "mere modicum" of evidence to support a conviction but allowed him to plead guilty.

Petitioner also complains that Noell allowed the State to withhold exculpatory evidence that could have proved his innocence. He states that "had counsel upheld the Sixth Amendment right to effective counseling, counsel would have come to the same conclusion as P[etitioner] did through research and investigation and could have easily turned the case belly up." He says that if Noell had properly investigated the police report, he would have discovered that there was missing material evidence. Petitioner states that on October 12, 2019, Noell brought it to the trial court's attention that a video was missing. He claims this video would have showed another person driving the vehicle away, while Petitioner was detained by law enforcement—which is relevant because he was accused of being in possession of the same vehicle. Nonetheless, Petitioner states Noell allowed Petitioner to plead guilty. He also contends that counsel did not try to investigate why videos from the two officers were

6

missing and that had counsel looked at the police reports, he would have seen that no supervisors approved the reports.

Petitioner asserts that counsel's failure to provide effective assistance prejudiced him because had it not been for counsel's ineffectiveness, he would not have pleaded guilty for a crime he did not commit, and instead would have insisted on going to trial. He contends that "if nothing else, law does not support P[etitioner] being convicted of a controlled substance." Next, Petitioner maintains that counsel presented no mitigating evidence and did not raise any defenses for him. He says that counsel never advised the court or Petitioner that the elements of possession had not been met by the State.

Petitioner contends that Noell coerced him into signing a plea agreement, asserts that counsel failed to adequately investigate the facts and law related to Petitioner's defense that someone else had committed the crime. He and his friend, Donaldson, were detained while another person drove away, but counsel failed to raise this defense even though Petitioner brought it to his attention. Petitioner says that counsel never argued that Petitioner was not in proximity to the controlled substance, nor raised the issue of why Petitioner was released and then later charged with possession of a drug when Petitioner was not even present during the search that located the drugs. Petitioner further argues that counsel did not investigate how he could be charged with possession of a controlled substance in a vehicle that he was not in, failed to investigate the arrest warrant that was "wholly based off lies," allowed the State to offer police reports that had not been approved by a supervisor,

7

and allowed the State to alter the video. He contends this was material because one of the officers said he believed Petitioner was in possession of the vehicle and thus in possession of the controlled substance. Despite all of this, Petitioner complains that Noell still allowed him to plead guilty. Petitioner argues that at the plea hearing, he was reluctant to accept the agreement, and he "stood in silence because of severe mental distress and ineffective[ness] of the counsel, which resulted in P[etitioner] taking a guilty plea."

However, the record of the plea hearing contradicts Petitioner's argument. The transcript shows that the court asked Petitioner if he wanted to enter a plea of guilty, and Petitioner stated that he did. The court advised him that this would waive his right to remain silent, and Petitioner agreed that this was what he intended to do. Docket No. 11-3 at 7. Petitioner was placed under oath and stated that he understood English, was not under the influence of any drugs, alcohol, or medications that would prevent him from understanding what they were doing in court, and was not under psychiatric treatment. He stated that he had plenty of time to discuss his case with Noell. Docket No. 11-3 at 8.

Some discussion ensued about the videos, and Noell explained that there were two different scenes because after Petitioner and the other individual were released, the officers went around the corner and investigated a vehicle. There were no dash cams but only body cams at the first scene. Noell indicated that he was satisfied with this explanation. Docket No. 11-3 at 11.

8

The court admonished Petitioner that he was charged with a third-degree felony enhanced with two prior convictions, giving him a range of punishment of 25 to 99 years or life in prison, and Petitioner acknowledged that he understood. He also acknowledged that a guilty plea could lead to deportation if he was not a citizen, that a conviction could be used to revoke any probation or parole he may be serving, and could be used to enhance the punishment in any future conviction he may have. Petitioner testified that he signed the acknowledgment of admonishments voluntarily. Docket No. 11-3 at 13.

Next, Petitioner acknowledged understanding that he had a right to a jury trial, including the right to call and cross-examine witnesses, the right to require proof beyond a reasonable doubt, and the right to testify or not. Noell stated that he and Petitioner had the indictment for more than ten days and had plenty of time to prepare the case for trial and waived the reading of the indictment. Docket No. 11-3 at 14.

Petitioner testified that he freely, knowingly, intelligently, and voluntarily waived his right to trial by jury, including the rights to call witnesses, cross-examine and confront the State's witnesses, the right to require proof beyond a reasonable doubt, and the right to testify or not. When asked if he wanted a trial, Petitioner replied "no, I don't want no trial." Docket No. 11-3 at 15.

The court advised Petitioner that by submitting the stipulation of evidence, he was making a judicial confession and swearing under oath that he was the same person charged in the indictment and that he was guilty as charged in the indictment

and asked if this was what he intended to do. Petitioner replied "yes, ma'am." He acknowledged receiving the discovery furnished by the State and that he and Noell had plenty of time to review the discovery. Docket No. 11-3 at 17.

Petitioner stated that he understood under the agreed punishment recommendation, the court would assess punishment at thirty years in prison without a fine. The court would also take into consideration another pending case for unlawful possession of a firearm, and then that pending case would be dismissed. Petitioner acknowledged understanding that the court did not have to follow the agreed punishment recommendation, and if the court did not follow it, he could withdraw his guilty plea and have a jury trial. However, if the court did follow the recommendation or set a shorter sentence, then he could not withdraw his guilty plea and would have only limited rights to appeal. Docket No. 11-3 at 19.

The court then advised Petitioner that they had discussed several documents, including an acknowledgment of admonishments, an acknowledgment of discovery, a stipulation of evidence, a waiver of jury trial, and an agreement to stipulate testimony.[1] Petitioner agreed that he had signed each of these after having time to talk to his lawyer about the meaning and effect of the documents as well as the nature of the charges against him, the range of punishment, the effect of entering a guilty plea, and any possible defenses he might have to the charge. After all of this, Petitioner testified that it was still his decision to give up his right to trial by jury

---

[1] *See* Docket No. 11-6 at 42–50 (acknowledgment of admonishments, waiver of jury trial, agreement to stipulate testimony, stipulation of evidence, indictment, waiver of motion for new trial and motion in arrest of judgment and waiver of right to appeal, and request for court to allow waiver of pre-sentence investigation and report, all signed by Petitioner).

10

and proceed with a plea of guilty to the indictment, understanding that the plea is without a jury and based on stipulated evidence. Docket No. 11-3 at 20.

After approving all of the written waivers, the court asked Petitioner how he pleaded to the charge that on or about March 17, 2017, in Smith County, Texas, he knowingly and intentionally possessed a controlled substance, phencyclidine, in an amount of more than one but less than four grams, and Petitioner replied "guilty, ma'am." He also pleaded "true" to two enhancement paragraphs in the indictment. Docket No. 11-3 at 21.

Petitioner testified that he was pleading guilty because he was guilty and had committed the offense. He said that no one had threatened him or promised him anything to get him to plead guilty, and that he pleaded true to the enhancement charges because it was true that he had those two prior convictions. Docket No. 11-3 at 23. The court admitted into evidence the written plea admonishment and acknowledgments, the stipulation of evidence, and the discovery compliance documents. Docket No. 11-3 at 24.

The State offered a digital copy of the written discovery, and this was admitted into evidence. The State then recommended a thirty-year sentence, and Petitioner agreed that this was his understanding. Docket No. 11-3 at 26. Petitioner acknowledged his guilt in the pending possession of a firearm case, and the court stated that case would be taken into consideration. The court then found Petitioner guilty of the charge of possession of a controlled substance and sentenced him to a thirty-year prison term without a fine. Petitioner acknowledged understanding that

11

the court had followed the recommendation and he therefore relinquished the right to appeal. Petitioner stated that he was satisfied with Noell's services. Docket No. 11-3 at 28. After correcting the case number on the motion to dismiss the possession of a firearm case, the proceedings concluded.

The Supreme Court has stated that solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As a result, a petitioner faces the heavy burden of proving that he is entitled to relief. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314 (1994) (petitioner's signature on guilty plea documents is prima facie evidence of the validity of the plea).

The critical question is whether the entry of Petitioner's guilty plea was knowing and voluntary. To demonstrate that he is entitled to relief, Petitioner must overcome the evidence of his own words. *See United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (holding that to be entitled to an evidentiary hearing on claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third person").

Contrary to his claim that he "stood in silence," Petitioner clearly and unequivocally testified that his guilty plea was knowing and voluntary, he was

12

pleading guilty because he was guilty, he had ample opportunity to discuss the case with his lawyer, and he understood what he was doing. This sworn testimony is entitled to the "strong presumption of verity," and Petitioner has failed to overcome this presumption. Nor has he offered independent indicia of the likely merit of his contentions, or specific factual allegations supported by the affidavit of a reliable third person. To the extent Petitioner contends that counsel's alleged ineffectiveness rendered his guilty plea involuntary, his claim is without merit.

Even if Petitioner's other claims of ineffective assistance of counsel were not foreclosed by his voluntary plea of guilty, they are nonetheless without merit.

He complains first that counsel failed to investigate the case, suggesting that an investigation would have revealed that someone else drove off in the car containing the controlled substances and that he had nothing to do with it. A habeas petitioner who alleges a failure to investigate on the part of counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). Petitioner, however, offers nothing but his own conclusory assertion as to what an investigation would have revealed, which is not sufficient. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *accord*, *Ross v. Estelle*, 694 F.2d 1008, 1011–12 and n.2 (5th Cir. 1983) (bald assertions unsubstantiated by anything in the record lack probative evidentiary value).

The evidence offered at the plea hearing showed that Petitioner disclaimed knowledge of the car in which the drugs were found, and the police had the car towed

away. Petitioner has offered nothing to suggest that an investigation would have revealed that an unknown person drove the car away. Thus, this argument is without merit.

Similarly, Petitioner complains that Noell did not investigate the elements of the case or explain these elements to him. He again fails to show what an investigation or review of the elements of possession would have revealed, or how this would have affected the outcome of the case. This claim is foreclosed by the stipulation of evidence that Petitioner signed, attesting that every allegation in the indictment is true and correct.

Although Petitioner complains that counsel allowed the State to withhold exculpatory evidence, apparently in the form of missing videos, he fails to show that the missing videos would in fact have been exculpatory. Petitioner's conclusory assertion that the videos contain exculpatory evidence is not sufficient to show ineffective assistance of counsel. *Ross*, 694 F.2d at 1011-12; *White v. Johnson*, 111 F.3d 892, 1997 WL 156829 (5th Cir. 1997). Accordingly, this claim is without merit.

Petitioner further complains that counsel did not present mitigating evidence or any defenses to the criminal charge. He does not point to any mitigating evidence or defenses in the record, and his unsubstantiated assertions that an unknown person drove off in the car—contrary to the evidence in the record showing that the police had the car towed—do not show that counsel acted ineffectively or that but for this alleged ineffectiveness, the result of the proceeding would have been different. This claim is without merit.

Petitioner further argues that counsel did not investigate how he could be charged with possession of a controlled substance in a vehicle that he was not in and failed to investigate the arrest warrant that was "wholly based off lies." He does not show what such an investigation would have revealed, nor how this would have affected the outcome of his case. As such, Petitioner's claim on this point is without merit.

Petitioner contends that counsel allowed the State to offer police reports that had not been approved by a supervisor but offers nothing to suggest that had counsel acted differently in this regard, the result of the proceeding would likely have been different. He also contends that counsel allowed the State to alter the video in some unspecified way, but this assertion is entirely conclusory and fails to show that counsel acted ineffectively or that but for such action, the result of the proceeding would likely have been different.

In his memorandum of law (Docket No. 1-1), Petitioner complains that counsel failed to file a motion to suppress. The state habeas court found as a fact that before law enforcement entered the car, Petitioner denied knowing anything about it and walked away from it. Consequently, Petitioner abandoned any expectation of privacy he had in the car, and a motion to suppress would have been denied. *Matthews v. State*, 431 S.W.3d 596, 610 (Tex. Crim. App. 2014); *Mims v. State*, 1992 WL 333427 (Tex. App.—Dallas 1992) (defendant who denied ownership of a car "effectively characterized the car as being abandoned.").

15

The state court's findings of fact are presumed correct unless rebutted by clear and convincing evidence, which Petitioner has not presented. 28 U.S.C. § 2254(e)(1); *Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004). Counsel had no duty to file a motion to suppress that would have lacked merit and been denied. *See Kirkpatrick v. Butler*, 870 F.2d 276, 283 (5th Cir. 1989). This claim is therefore without merit.

None of Petitioner's claims show that he received ineffective assistance of counsel or that but for such ineffective assistance, the result of the proceeding would likely have been different. Significantly, Petitioner has offered nothing but *post hoc* assertions that he would have pleaded not guilty and demanded a trial but for counsel's alleged deficiencies, which are not sufficient. *Lee*, 137 S. Ct. at 1966. A review of the totality of the contemporaneous evidence confirms Plaintiff's testimony that he pleaded guilty knowingly and voluntarily. Accordingly, Petitioner's first ground for relief is without merit.

## 2. Withholding Exculpatory Evidence

In his second ground for relief, Petitioner contends that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), in that videos were altered or withheld. He asserts that the State withheld the video showing that he did not abandon a car with drugs in it, but another person abandoned the vehicle and fled.

Petitioner offers nothing beyond his own conclusory assertion that such an exculpatory video existed. *Williams v. Scott*, 39 F.3d 320, 1994 WL 612473 (5th Cir. 1994) (conclusory allegations of a *Brady* violation are insufficient). In any event,

16

Petitioner's guilty plea waived any claim of a *Brady* violation. *Matthew v. Johnson*, 201 F.3d 353, 362 (5th Cir. 2000). Accordingly, this claim is without merit.

### 3. No Evidence to Support the Conviction

Petitioner contends that there was no evidence that he was in possession of a controlled substance, and he was not seen getting into or out of the car in which the drugs were discovered. The Fifth Circuit has held that a guilty plea is more than a mere confession, but rather, is an admission that the defendant committed the charged offense. *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991), citing *North Carolina v. Alford*, 400 U.S. 25, 32 (1970). As a general rule, therefore, a defendant may not collaterally attack a voluntary and intelligent plea; such a plea does not become vulnerable to habeas corpus review simply because later judicial decisions indicate that the plea rested on a faulty premise or that the legal and factual evaluations of the defendant's counsel were incorrect. *Taylor*, 933 F.2d at 327. If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review. *DeVille*, 21 F.3d at 657.

State courts are under no constitutional duty to establish a factual basis for a guilty plea prior to its acceptance unless the judge has specific notice that such an inquiry is needed, and so no federal constitutional issue is raised by the failure of a Texas state court to require evidence of guilt corroborating a voluntary plea. *Smith v. Estelle*, 786 F.2d 697, 702-03 (5th Cir. 1986). Thus, a petitioner who pleads guilty waives the right to challenge the sufficiency of the evidence. *See Kelley v. Alabama*,

636 F.2d 1082, 1083 (5th Cir. 1981). Petitioner's claim that there was no evidence to support his conviction is waived by his guilty plea and therefore without merit. To the extent Petitioner couches this claim in terms of ineffective assistance of counsel, the claim lacks merit because Petitioner offers no contemporaneous evidence demonstrating that had counsel acted differently, he would not have pleaded guilty but insisted on going to trial. Thus, Petitioner's claims for habeas corpus relief are without merit.

### D. Conclusion

To obtain federal habeas corpus relief, a state prisoner must show that the state court's rejection of his claim was so wrong that the error was well understood and comprehended in existing law beyond any possibility for fair-minded disagreement—in other words, that it is beyond the realm of possibility that a fair-minded jurist could agree with the state court. *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019). Petitioner has not made such a showing. Accordingly, his petition for habeas corpus relief is without merit.

A petitioner may not appeal from a final order in a district court habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability sua sponte because the district court that denies a petitioner relief is best positioned to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The prerequisite for a certificate of appealability is a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

Petitioner has not shown that the issues here are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. Consequently, Petitioner is not entitled to a certificate of appealability.

It is accordingly **ORDERED** that this petition for the writ of habeas corpus is hereby **DISMISSED WITH PREJUDICE**. It is further **ORDERED** that Petitioner Dawalus Marquis Hampton is **DENIED** a certificate of appealability sua sponte. All motions that may be pending in this action are **DENIED** as moot.

So **ORDERED** and **SIGNED** this **13th** day of **March, 2022.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE